# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

JESSICA BRYAN,

    Plaintiff,

v.                                          Case No: _____

GARY KING (in his individual capacity),

    Defendant.

## COMPLAINT

NOW COMES the plaintiff, Jessica Bryan, by her attorney Paul A. Kinne of Gingras, Thomsen & Wachs, who hereby submits the following:

### NATURE OF PROCEEDINGS

1.    This case is being brought pursuant to 42 U.S.C. sec. 1983 whereby the plaintiff alleges that former District Attorney Gary King discriminated against the plaintiff on the basis of her sex by subjecting her to a sexually hostile working environment and other sexually harassing conduct.

### JURISDICTION AND VENUE

2.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because for the claims that arise under federal law.

3.    Venue is proper under 28 U.S.C. § 1391 in that all the acts alleged to have been committed by the defendant occurred within the Western District of Wisconsin.

**PARTIES**

4. Plaintiff Jessica Bryan (Bryan, female) is an adult resident of the State of Wisconsin, and at all times relevant hereto, has resided within the Western Judicial District of Wisconsin.

5. At all times relevant to this matter, Defendant Gary King (King, male) was employed as the District Attorney for Eau Claire County, which is located within the Western Judicial District of the State of Wisconsin. The conduct attributed to King in this complaint was undertaken within the scope of his employment and under color of state law. His conduct was further intentional.

**FACTUAL BACKGROUND**

6. At all times relevant to this case, Bryan worked as the Victim Witness Coordinator in the Victim Witness Office for Eau Claire County. In her role, she worked closely with the Eau Claire District Attorney's Office. Institutionally speaking, the District Attorney controlled, at least in part, the terms and conditions of Bryan's employment with Eau Claire County.

7. The District Attorney is an elected position in Wisconsin. A District Attorney does not report to any other position. No one can discipline a District Attorney as an employee: a District Attorney is his or her own boss.

8. By August 2019, King was making sexually harassing comments to Bryan at least monthly. This continued through November, 2020.

9. King's conduct over this period included but is not limited to the following:

a. In July 2019, King complimented Bryan to Bryan's husband, telling him that Bryan was great and he was lucky to have her.

b. In the summer of 2019, King remarked that Bryan's summer attire was "too distracting" for him, ordering her not to wear a particular outfit again. He also leered at her.

c. In March 2020, King drove past hotels on the way to a breakfast meeting and asked Bryan to get a room with him. When Bryan rejected his proposal, King informed her, "I'm telling you that you have to." While he attempted to pass off his comment as a joke, during the breakfast meeting, he continued to cajole her about getting a room.

d. During the period covering May through July 2020, King informed Bryan that she needed to "stay out of his dreams" because it was getting him in trouble, implying that his dreams about her were sexual in nature.

e. In June 2020, King expressed to Bryan that he was disappointed that Bryan had not attended a wedding over the prior weekend. He commented that she was supposed to come so they could have gone in the corner to "make out" and give everyone something to talk about.

f. During the June to July 2020 time period, a coworker warned Bryan that King was in a "hugging mood." King stated to Bryan, "Yes I am! Come give me a hug!" King then hugged Bryan twice. He also pulled her ponytail out and played with Bryan's hair. King often commented about Bryan's hairstyle and her appearance, generally.

g. In this same period, King asked Bryan if she wanted to have a "threesome" with him and a man who lived in a pink house behind the courthouse.

10. Around November 2020, the harassing comments and interactions between Bryan and King increased in frequency and intensity.

a. On December 23, 2020, Bryan had her shoe off with her legs crossed such that her bare foot was resting on her leg. King approached her from behind and began rubbing Bryan's foot.

b. On or about January 5, 2021, King told Bryan that he loved her and that he felt he was holding things back. He hugged Bryan from behind while she was sitting at her desk and attempted to kiss her on the mouth. Bryan moved in time to avoid a mouth-to-mouth kiss, but King did kiss her on the cheek.

c. Later that same day, King pulled Bryan onto his lap. When she struggled to free herself, King responded, "No, you need to sit here and comfort me." Bryan managed to get free and to sit next to King, but as she did, King held her hand.

d. On January 19, 2021, King informed Bryan that he thought she was the kind of "girl" he could take to the Super 8 [a discount hotel] but instead she was the kind of person he would have to take to the Lismore [a higher-end hotel in Eau Claire]. He also accused her of having eight men on the side and told her that he did not approve of her outfit that day. In fact, he said it was so ugly he would cut it off her if she wore it to work again.

e. On or about February 10, 2021, King asked Bryan about her sex life with her husband. He commented that if either of them approached the other in a vulnerable state, neither would be able to control themselves sexually. During the same meeting, King told Bryan that she was beautiful inside and out, that he trusts her and that she is one of the few people he lets into his bubble.

f. At the conclusion of the meeting, King asked Bryan if he should send an email to staff to inform them that he and Bryan were a couple. When Bryan said "no," King informed her they could secretly be together. Bryan asked King to please keep things professional, but he said he could only promise to do so 95 percent of the time.

g. On February 16, 2021, King informed Bryan that they would end up together someday. When Bryan did not respond except with folded hands, King stated, "You're giving me a sign folding your hands that way."

11. Throughout the period covered by the harassment described above, Bryan repeatedly told King to stop his offensive and harassing conduct. King refused to stop.

12. Prior to mid-February 2021, Eau Claire County employees, including management employees, were aware of King's conduct and that Bryan found it to be offensive.

13. Around mid-February 2021, Bryan made a formal complaint to Eau Claire County human resources. However, at some point, Corporation Counsel for Eau Claire County informed Bryan that because King was the District Attorney, Eau

Claire County "could not touch him."

14. During the period described above, King was frequently intoxicated while engaging in his abusive conduct.

### BRYAN'S FIRST CAUSE OF ACTION AGAINST KING - VIOLATION OF THE EQUAL PROTECTION CLAUSE – SEX DISCRIMINATION

15. Plaintiff Bryan restates the previous paragraphs as if set forth fully herein.

16. By engaging in the conduct described above, King violated Bryan's rights to equal protection under laws by subjecting her to sexual harassment and abuse.

17. This abuse has caused Bryan severe and permanent emotional and other harm.

WHEREFORE, the plaintiff requests a trial by jury along with the following relief:

A. Unspecified compensatory damages;

B. Punitive damages;

B. Any injunctive relief that the Court may deem just and proper to award;

C. An award of Plaintiffs' reasonable attorneys' fees and costs incurred in this action;

D. Pre- and post-judgment interest; and

E. Any other such relief as the Court may deem appropriate.

## **JURY DEMAND**

The plaintiff respectfully requests that this matter be tried before a jury of six (6) competent persons.

Dated this 5th day of January, 2022.

                                                **GINGRAS THOMSEN & WACHS LLP**
                                                Attorneys for Plaintiff

                                                s/ Paul A. Kinne
                                                Paul A. Kinne
                                                State Bar Number:  1021493

8150 Excelsior Drive
Madison, WI  53717
Phone:  (608) 833-2632
Fax:  (608) 833-2874
Email: kinne@gtwlawyers.com